IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

STEVEN W. STETTNICHS,

Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. C15-4066

REPORT AND RECOMMENDATION

TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

II.     PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.    PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

IV.     FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
        A.    Stettnichs' Education and Employment Background . . . . . . . . . . . .  5
        B.    Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . . .  5
              1.    Stettnichs' Testimony . . . . . . . . . . . . . . . . . . . . . . . . .  5
              2.    Vocational Expert Testimony . . . . . . . . . . . . . . . . . . . .  5
        C.    Stettnichs' Medical History . . . . . . . . . . . . . . . . . . . . . . . . .  6

V.      CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        A.    ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . . 11
        B.    Objections Raised By Claimant . . . . . . . . . . . . . . . . . . . . . . . 14
              1.    Dr. Gasner's Opinions . . . . . . . . . . . . . . . . . . . . . . . . 14
              2.    Credibility Determination . . . . . . . . . . . . . . . . . . . . . . 17

VI.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VII.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Steven W. Stettnichs on August 7, 2015, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits. Stettnichs asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits. In the alternative, Stettnichs requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On April 26, 2012, Stettnichs applied for disability insurance benefits. In his application, Stettnichs alleged an inability to work since July 15, 2011 due to lower back and neck injuries that cause him pain and fatigue with activity. Stettnichs' application was denied on July 31, 2012. On September 21, 2012, his application was denied on reconsideration. On November 14, 2013, Stettnichs appeared via video conference with his attorney before Administrative Law Judge ("ALJ") Alison K. Brookins for an administrative hearing. Stettnichs and vocational expert Deborah A. Determan testified at the hearing. In a decision dated February 5, 2014, the ALJ denied Stettnichs' claim. The ALJ determined that Stettnichs was not disabled and not entitled to disability insurance benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Stettnichs appealed the ALJ's decision. On June 3, 2015, the Appeals Council denied Stettnichs' request for review. Consequently, the ALJ's February 5, 2014 decision was adopted as the Commissioner's final decision.

On August 7, 2015, Stettnichs filed this action for judicial review. The Commissioner filed an Answer on October 15, 2015. On November 17, 2015, Stettnichs filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing other work

that exists in significant numbers in the national economy. On December 16, 2015, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On December 29, 2015, Judge Mark W. Bennett referred this matter to a magistrate judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## III. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's

decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court· "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## IV. FACTS

### A. Stettnichs' Education and Employment Background

Stettnichs was born in 1964. In school, Stettnichs completed the eighth grade. He later earned a GED. In the past, Stettnichs worked as a construction worker, general welder, and production welder.

### B. Administrative Hearing Testimony

#### 1. Stettnichs' Testimony

At the administrative hearing, Stettnichs explained that he left his last job as a welder for Sioux City Industries after he injured his neck. According to Stettnichs, the pain in his neck made welding difficult. Stettnichs testified "[w]ell in welding, you have to look down a lot. And it -- it's very painful for me to do that for any amount of time."[1] Stettnichs further testified that he is unable to perform any type of work due to constant pain. In addition to neck pain, Stettnichs also identified low back pain and arthritis in his hands which cause arm pain. Stettnichs also stated he has difficulty concentrating due to the distractions caused by his pain. Stettnichs estimated he could walk "half a block" and stand for "just . . . a few minutes" due to his pain. Stettnichs indicated that when his pain intensifies, he must stop whatever activity he is engaged in and rest for about an hour. In addition to pain, Stettnichs also suffers from breathing difficulties associated with activity due to COPD. He stated he loses his breath "just walking up the stairs."

#### 2. Vocational Expert Testimony

At the hearing, the ALJ provided vocational expert Deborah A. Determan with a hypothetical for an individual who:

> has a residual functional capacity to perform light work, but would have the following other limitations, which would include never climbing ladders; ropes; or scaffolds; occasionally climbing ramps or stairs; occasional stoop; kneel;

---

[1] Administrative Record at 40.

> crouch; and crawl; no overhead reaching; or lifting with the
> bilateral upper extremities. He should avoid concentrated
> exposure to extreme cold, vibration, and hazard.

(Administrative Record at 56.) The vocational expert testified that under such limitations,
Stettnichs could not perform his past relevant work, but could perform the following jobs:
(1) cashier, (2) counter attendant, and (3) routing clerk. The ALJ provided the vocational
expert with a second hypothetical for an individual who:

> can perform sedentary work; is limited to occasional ladder;
> and stair climbing; occasional crawl; occasional . . . twist; and
> bend; frequent balance; avoid concentrated exposure to
> pulmonary irritants; also avoid concentrated exposure to
> extreme cold; vibration; hazard.

(Administrative Record at 57.) Again, the vocational expert testified that under such
limitations, Stettnichs could not perform his past relevant work, but could perform the
following unskilled sedentary jobs: (1) order clerk for food and beverage, (2) document
preparer, and (3) telephone quotes clerk. Finally, the ALJ asked whether an individual
could be competitively employed if he or she missed two or more days of work per month
and/or needed to lie down several times per day for an hour at a time. The vocational
expert responded that such limitations would preclude competitive employment.

### C. Stettnichs' Medical History

On September 22, 2009, Stettnichs met with Dr. David L. Hoversten, M.D.,
regarding neck and arm pain. X-rays showed "severe" degenerative disc disease of the
neck. An MRI showed "severe" left-sided foraminal stenosis and a small disc extrusion
at C6-7. Dr. Hoversten recommended an epidural block as treatment, and consultation
with a neurosurgeon.

On September 29, 2009, Stettnichs met with Fay M. Winder, PA-C, and Dr. Bryan
Wellman, M.D., for a neurosurgical consultation. Winder reviewed Stettnichs' medical
history for Dr. Wellman and noted Stettnichs "has had neck pain with some arm weakness

on the right side specifically ever since a work-related injury on 10/28/08."[2] Stettnichs reported that his pain has increased in severity since the 2008 work-related injury, and "anything he does activity wise has increased his pain."[3] He stated "he just dreads going to work just secondary to the pain."[4] Upon examination, Dr. Wellman diagnosed Stettnichs with neck pain and symptoms of cervical myelopathy with increased reflexes and dysfunction of his hands. Dr. Wellman also diagnosed spinal stenosis at C4-C5, C5-C6, and C6-C7. Dr. Wellman recommended surgical intervention because Stettnichs' problems had the "possibility of worsening with time."[5]

On June 10, 2010, Stettnichs met with Dr. Jacqueline M. Stoken, D.O., for an independent medical examination. Stettnichs' complaints included neck pain, and wrist and hand pain. Stettnichs described his neck pain as:

> aching, exhausting, tiring, continuous, penetrating, miserable, and unbearable. It ranges from 3-10/10. It averages 6/10. Right now it is 4/10. What makes it better is rest and medicine. What makes it worse are standing, lifting, and welding.

(Administrative Record at 271.) Stettnichs described his wrist pain as:

> stabbing, intermittent, sharp, continuous, and miserable. It ranges from 2-7/10. It averages 5/10. Right now it is 3/10. What makes it better is rest and medicine. What makes it worse is standing, lifting, and grasping.

---

[2] Administrative Record at 306.

[3] Id.

[4] Id.

[5] Id. at 308. According to another doctor who reviewed Stettnichs' medical history, Stettnichs did not have surgery due to worker's compensation insurance not paying for it. See Administrative Record at 269.

(Administrative Record at 271.) Stettnichs indicated that medication gives him "moderate" relief. He further indicated that his pain "interferes mildly to moderately with his walking ability and appetite and moderately to severely with his activity, mood, work routine, relationships, sleep, enjoyment of life, and concentration."[6]  Upon examination, Dr. Stoken diagnosed Stettnichs with acute cervical strain, history of spinal stenosis at C4-C5, C5-C6, and C6-C7, a herniated disc at C4-5, left central disc extrusion at C6-7, and cervical myelopathy. Dr. Stoken assessed Stettnichs with a 13% impairment of the whole person due to chronic neck pain and muscle tension headaches. Dr. Stoken opined that "[r]easonable permanent work restrictions would be to avoid prolonged looking up or down and avoid working more than 8 hours and lifting more than 50 lbs. on a frequent basis."[7]

On October 28, 2010, Stettnichs met with Dr. John D. Kuhnlein, D.O., for an independent medical examination. Stettnichs' chief complaints were "constant" neck pain and swelling and pain in his right elbow and hand. Stettnichs rated his pain between 4 and 8 on a 10-point scale, with average pain at 5 out of 10. Stettnichs also reported:

> he is doing the same job that he did before. He says that when welding in static flexion, he stops to lift the hood and stretch his neck. He no longer flicks the hood up and down. He says that he lifts differently than he did before, lifting more slowly and more cautiously, indicating that he gets pain with faster lifting activities.

(Administrative Record at 279.) On physical examination, Dr. Kuhnlein found:

> Mr. Stettnichs exhibited rather marked pain behaviors with all cervical range of motion. During the examination, he tended to hold his neck fairly stiffly, and turn his trunk rather than his neck but at formal exam he moved better in flexion, although still exhibited decreased active range of motion which wasn't

---

[6] Administrative Record at 271.

[7] *Id.* at 273.

8

noted with passive range of motion. He had Grade 5 grip strength bilaterally. . . . He had cogwheeling noted with motor strength testing, but he had no atrophy in either upper extremity, and had Grade 5 motor strength throughout. . . .

With palpation, he complained of central and right-sided cervical tenderness. . . . The wrists were not tender. . . . Phalen's testing produced a pressure sensation in the last three fingers, but nothing in the median nerve distribution. Tinel's testing over both median nerves produced tenderness just under the tapping hammer, not in the distribution of the median nerve. Tinel's sign over the ulnar and cubital tunnels was negative. . . .

(Administrative Record at 281-82.) Dr. Kuhnlein diagnosed Stettnichs with complaints of neck pain. Dr. Kuhnlein opined that Stettnichs' history "suggests a cervical strain." Additionally, "records document a cervical myelopathy, which was not seen on today's evaluation."[8] Dr. Kuhnlein also noted "[c]omplaints of intermittent right upper extremity swelling--not seen on today's evaluation."[9] Dr. Kuhnlein concluded:

I would return Mr. Stettnichs to work within his previous permanent restrictions outlined by Dr. Hoversten on August 15, 2006, with permanent restrictions for no lifting over 30 pounds and no frequent bending, lifting or stooping. There is no objective evidence that he sustained any change in his functional abilities after the injury.

(Administrative Record at 287.)

On June 26, 2012, at the request of Disability Determination Services ("DDS"), Stettnichs met with Dr. Jeannett Tan Wu, M.D., for a consultative examination. Stettnichs' chief complaints were low back pain and neck pain. In reviewing Stettnichs' symptoms, Dr. Wu noted:

---

[8] Administrative Record at 282.

[9] *Id.*

> He does have neck pain, 24/7; worse with activity; it's a dull
> ache and occasionally the back of the shoulder tightens up.
> Occasionally the right shoulder will get numb and occasional
> pain, right wrist. Occasionally he has pain in both hands. He
> also has had lower back pain since 2000. . . . Ultimately he
> had surgery, which seemed to help, but he continues to have
> pain in the disc. . . . The back pain is worse with activity. It
> limits him, even sitting a long time, it hurts. He has to get up.

(Administrative Record at 255.) Upon examination, Dr. Wu diagnosed Stettnichs with back pain, neck pain, and "suspect" cervical disc disease. Dr. Wu concluded "[h]e can carry out instructions. He can maintain his attention, concentration and pace. He doesn't have a problem with interacting with supervisors, co-workers and the public. He said he can use good judgment and respond appropriately with changes in the work place."[10]

On November 11, 2013, Stettnichs met with Dr. Marlon Gasner, DPT, for a functional capacity evaluation. In reviewing Stettnichs physical health symptoms, Dr. Gasner found:

> Mr. Stettnichs reports having bilateral neck pain with
> headaches from suboccipital region to mid thoracic spine. He
> also complains of occasional arm and shoulder pain to the hand
> and finger regions. He also reports low back pain being
> present in the center of the back with occasional pain down the
> right leg. He states the pain is present on a constant basis and
> is best relieved by lying down. Pain frequency is daily. Pain
> is mainly described as burning, aching, and a constant soreness
> with occasional sharpness and jabbing symptoms present.

(Administrative Record at 296.) In assessing Stettnichs' physical abilities, Dr. Gasner determined, Stettnichs could: (1) occasionally lift 4 to 16 pounds, occasionally carry 10 pounds, and occasionally push and pull 50 pounds; (2) frequently sit (2.5 - 5.5 hours); (3) occasionally stand, walk, climb ladders and stairs, bend, crawl, and twist; (4) frequently balance; (5) occasionally reach repetitively at desk and floor level;

---

[10] *Id.* at 256.

(6) occasionally grasp and finger bilaterally; and (7) occasionally sustain desk level reaching. Dr. Gasner also estimated Stettnichs' activity tolerances and determined Stettnichs could: (1) sit for 30 minutes at one time, (2) stand 2-5 minutes at one time, (3) walk 3-5 minutes at one time, (4) drive for 30 minutes at one time, and (5) lift 20 pounds. In summary, Dr. Gasner concluded:

> Mr. Stettnichs performed at the Sedentary physical demand level (according to Department of Labor Standards) within the material handling and positional tolerances listed in this report. He was able to perform in the Light category only with occasional floor to knuckle lifting. . . .
>
> Cervical pain rated at 7-8/10 and low back pain rated at 6/10 during functional tasks. . . .
>
> Mr. Stettnichs demonstrated consistency of effort during this evaluation according to physiological, behavioral and validity criteria.

(Administrative Record at 294.)

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Stettnichs is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible

limitations. 20 C.F.R. § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined Stettnichs had not engaged in substantial gainful activity since July 15, 2011. At the second step, the ALJ concluded from the medical evidence that Stettnichs has the following severe impairments: obesity, degenerative disc disease of the cervical spine with radiculopathy, degenerative disc disease of the lumbar spine, and COPD. At the third step, the ALJ found Stettnichs did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Stettnichs' RFC as follows:

> [Stettnichs] has the residual functional capacity to perform sedentary work . . . in that [he] can lift 10 pounds occasionally and frequently; stand and/or walk for 2 hours out of an 8 hour work day with normal breaks; sit for up to 6 hours out of an 8 hour work day with normal breaks; and push and pull the same weights; except [Stettnichs] can only occasionally climb ladders and stairs, crawl, engage in trunk-twisting, or bend; frequently balance; and should avoid concentrated exposure to pulmonary irritants, extreme cold, vibration, and workplace hazards.

(Administrative Record at 22.) Also at the fourth step, the ALJ determined that Stettnichs was unable to perform his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Stettnichs could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Stettnichs was not disabled.

## B. Objections Raised By Claimant

Stettnichs argues that the ALJ erred in two respects. First, Stettnichs argues the ALJ failed to properly evaluate the opinions of Dr. Gasner, a physical therapist who performed a functional capacity evaluation for Stettnichs. Second, Stettnichs argues the ALJ failed to properly evaluate his subjective allegations of pain and disability.

### 1. Dr. Gasner's Opinions

As a physical therapist, Dr. Marlon Gasner, DPT, is not classified as an "acceptable medical source" under the Social Security Regulations. Even though Dr. Gasner is not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. On August 9, 2006, the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a physical therapist, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

In her decision, the ALJ addressed Dr. Gasner's opinions as follows:

> [Stettnichs] underwent yet another IME in November 2013 [with] Marlon Gasner, DPT (Exhibit 11F). During this exam, [Stettnichs] had decreased step length, slow gait, little

14

unprompted cervical or lumbar rotation, muscle tightness, limited flexibility, and a limited range of motion throughout the body (Exhibit 11F, p.6). Some of these findings, particularly the extent of his range of motion issues, appear inconsistent with his impairments.

Based on this opinion, Mr. Gasner opined that [Stettnichs] was limited to "sedentary" work, with "occasional" pushing, pulling, standing, walking, climbing, trunk bending, reaching, and handling, with only frequent sitting and balancing (Exhibit 11F, p.2). This opinion is generally consistent with Mr. Gasner's exam findings, with a few exceptions. There is no evidence that [Stettnichs'] ability to sit is limited. Furthermore, while the record indicates complaints of upper extremities symptoms, [Stettnichs] alleges only intermittent upper extremity symptoms, and this exam had lack of testing pertaining to reaching and handling. As a result, the undersigned finds these limitations are not persuasive. Otherwise, this opinion is supported by the examination findings, and it received significant weight.

(Administrative Record at 25.)

Stettnichs has no complaint with the ALJ's overall determination that Dr. Gasner's opinions are entitled to "significant" weight. Instead, Stettnichs asserts the ALJ erred in failing "to include limitations on [Stettnichs'] ability to reach, handle, and finger due to neck and arm pain."[11] Indeed, Stettnichs contends that contrary to the ALJ's findings:

Mr. Gasner's evaluation included testing regarding [Stettnichs'] ability to use his arms and hands. Mr. Gasner prepared an hour-long circuit of generic non-material handling activities to test such activities such as repetitive and sustained overhead reaching and desk level reaching. . . . Contrary to the ALJ's assertion, Mr. Gasner specifically tested Mr. Stettnichs' ability to reach, handle and finger.

---

[11] Stettnichs' Brief (docket number 11) at 13.

Stettnichs' Brief (docket number 11) at 14. The Commissioner responds to Stettnichs' assertion that Dr. Gasner tested Stettnichs' ability to reach and finger with non-material handling activities as follows:

> [The non-material handling] activities did not test [Stettnichs'] reaching and fine motor movements while seated as would be the situation in sedentary work, which the ALJ found [Stettnichs] could perform. In fact, [Stettnichs] performed the testing from either a squatting or kneeling position, and he was not seated in a chair like he would be when performing the sedentary jobs the VE identified.

Commissioner's Brief (docket number 12) at 7-8.

Turning to the record, Dr. Gasner set up an hour long circuit of generic non-material handling activities for Stettnichs to perform, including: (1) Ladder climb, (2) repetitive trunk bending with floor reaching, (3) crawling, (4) sustained trunk bend with fine motor movements, (5) sustained squat with repetitive and sustained desk level reaching, and (6) kneeling with repetitive and sustained overhead level reaching.[12] The Commissioner is correct that Dr. Gasner did not test Stettnichs' ability to reach and handle from a sedentary position. Moreover, it is unclear if Stettnichs even attempted all of these activities, as Dr. Gasner indicated "Mr. Stettnichs only performed 5 minutes of circuit before having to stop secondary to pain 7/10 in the low back and 8/10 in the cervical region."[13] Therefore, the Court finds that the ALJ's conclusion that Dr. Gasner's examination lacked "testing pertaining to reaching and handling" is supported by the record. The ALJ also thoroughly reviewed and addressed the objective medical evidence in the record.[14] Consistent with the ALJ's review of the record, he correctly pointed out

---

[12] *See* Administrative Record at 302.

[13] *Id.*

[14] *See id.* at 23-25 (providing a thorough review of the medical evidence in the
(continued...)

that "[t]here is no evidence that [Stettnichs'] ability to sit is limited. Furthermore, while the record indicates complaints of upper extremities symptoms, [Stettnichs] alleges only intermittent upper extremity symptoms[.]"[15] Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Dr. Gasner's opinions in accordance with SSR 06-03p. Great deference is given to an ALJ's evaluation of "other medical evidence," and the Court concludes that the ALJ adequately addressed the evidence from Dr. Gasner. *See Raney*, 396 F.3d at 1010. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *Credibility Determination*

Stettnichs argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Stettnichs maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Stettnichs' testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a

---

[14](...continued)
record).

[15] *Id.* at 25.

claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective

testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In her decision, the ALJ addressed Stettnichs' credibility as follows:

> [Stettnichs] reported he was terminated as part of a settlement agreement on the alleged onset date (Exhibit 2E, p.2). However, [Stettnichs] later informed his provider that he had been "laid off" because he could not perform the "heavy work of welding" (Exhibit 2F, p.3). While these statements are not entirely incompatible, this discrepancy does raise some question about the overall completeness and reliability of his reports.
>
> Moreover, as discussed below, [Stettnichs'] impairments have been present since several years prior to the alleged onset date, and there is little or no evidence of worsening in his condition. As [Stettnichs] was previously able to work, despite his impairments, this raises a question as to why he is allegedly no longer able to work.
>
> During one of [Stettnichs'] examinations, it is noted that there are inconsistencies in [his] reports of pain (Exhibit 8F, p.12). Notably, while [he] has a large number of litigated worker's compensation claims, suggesting he is familiar with the need for documentation, he did not seek treatment for 10 months after his initial injury, reports inconsistent onset of pain and inexplicably increased his complaints of pain without any objective signs of worsening (Exhibit 8F, p.12-13). While these factors are not dispositive regarding the credibility of his complaints, they do point to some issues in the consistency of [his] allegations.
>
> As a result, the undersigned finds [Stettnichs'] allegations only partially credible.

(Administrative Record at 22-23.) The ALJ also thoroughly reviewed the medical evidence in the record, and noted inconsistencies in Stettnichs' allegations of pain and

disability with the objective evidence. For example, the ALJ pointed out in May 2013, Stettnichs reported chronic back pain. "[H]e was given an anti-inflammatory and pain medication, and he was advised to lose weight and exercise (Exhibit 10F, p.1). Despite his ongoing complaints, this conservative treatment suggests he was not as limited as he alleges to this agency."[16]

In her decision, the ALJ thoroughly considered and discussed Stettnichs' treatment history, the objective medical evidence, his functional restrictions, use of medications, and work history in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Stettnichs' subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Stettnichs' subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

I find the ALJ properly considered and addressed the opinions of Dr. Gasner and properly determined Stettnichs' credibility with regard to his subjective allegations of pain

---

[16] Administrative Record at 24.

and disability. Accordingly, I believe the ALJ's decision is supported by substantial evidence and should be affirmed.

## VII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **AFFIRM** the final decision of the Commissioner of Social Security and enter judgment against Stettnichs and in favor of the Commissioner.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this ___8th___ day of February, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA